UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | 1:11-cr-00015-JAW |
| | ) | |
| | ) | |
| CREG A. SWAIN | ) | |

**ORDER ON ADMISSIBILITY OF POLYGRAPH EVIDENCE**

Alleging that his Fifth Amendment privilege against self-incrimination was violated, the Defendant seeks to preclude from his final revocation hearing evidence of statements he made during a polygraph examination administered pursuant to his sex offender treatment that suggest he violated the terms of his supervised release. As a supervised releasee's statements regarding the violation of terms of supervised release do not implicate the Fifth Amendment, the Court denies the Defendant's motion.

## I.   BACKGROUND

On April 25, 2006, the Defendant was sentenced in the United States District Court for the Eastern District of Texas to 57 months imprisonment followed by 120 months of supervised release. As part of his supervised release, the sentencing Court ordered that the Defendant participate in a sex offender treatment program, including a provision that the program could include physiological testing instruments, such as a polygraph. Mr. Swain's conditions of supervised release also prohibited possessing or viewing depictions of sexually explicit conduct and contact

with persons under the age of 18 unless supervised by an adult approved by the probation officer.   On April 15, 2010, Mr. Swain began his term of supervised release in the District of Maine.

In May, 2012, Mr. Swain took a maintenance polygraph as part of his sex offender treatment and on May 18, 2012, based in part on the results of that polygraph, the Government moved to revoke his supervised release. *Pet. for Warrant or Summons for Offender Under Supervision* (ECF No. 26).   On May 21, 2012, Mr. Swain was arrested and detained pending revocation hearing.   In support of its petition, the Government proposes to submit a report of that polygraph examination at Mr. Swain's impending Final Revocation Hearing scheduled for July 23, 2012.   The Government represents that, before the administration of the polygraph, the Defendant signed two statements confirming that he understood that the examination was voluntary and that he could terminate it at any time. After signing these statements, Mr. Swain revealed to the examiner that he had purchased and viewed nine adult pornographic movies and masturbated to those movies, that he had masturbation fantasies involving one of his victims, and that he had had contact with minors without permission from his therapist or probation officer.   Mr. Swain's sex offender treatment program notified his probation officer of the polygraph results and provided the officer with a letter dated May 17, 2012 that gave an overview of Mr. Swain's status in treatment.   The letter offered the opinion that Mr. Swain is at considerable risk to reoffend and is not presently an appropriate candidate for treatment in the community.

2

## II.   THE PARTIES' POSITIONS

The defense argues that Mr. Swain's statements made at the polygraph examination are inadmissible because his Fifth Amendment right against self-incrimination was violated. *Def.'s Mot.* in Limine *re: Admissibility of Evidence* at 1-2 (ECF No. 47) (*Def.'s Mot.*). Specifically, Mr. Swain argues that his statements were not "voluntary" because he faced revocation if he refused to respond. *Def.'s Mot.* at 2.

The Government responds that while incriminating statements made in prison or on probation may retain a measure of Fifth Amendment protection, those protections do not apply where a defendant on supervised release is questioned during a polygraph examination about conduct related to his or her release terms. *Gov't's Resp. to Def.'s Mot.* in Limine at 3-4 (ECF No. 48) (*Gov't's Mot.*).

## III.   DISCUSSION

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself," U.S. CONST. AM. V, protecting a person from "answer[ing] official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). *See also Minnesota v. Murphy*, 465 U.S. 420, 426 (1984). Even if a person is imprisoned or on probation when he makes incriminating statements in response to official questions, such statements "are inadmissible in a subsequent trial for a crime other

3

than that for which he has been convicted." *Baxter v. Palmigiano*, 425 U.S. 308, 316 (1976); *see also Murphy*, 465 U.S. at 426.

The Supreme Court has expressly stated that "[a] state may require a probationer to appear and discuss matters that affect his probationary status" and that "such a requirement, without more, does not give rise to a self-executing privilege." *Murphy*, 465 U.S. at 435. The Court noted that that result may differ if the probationer is required to answer questions that "call for answers that would incriminate him in a pending or later criminal prosecution." *Id.* "Although a revocation proceeding must comport with the requirements of due process, it is not a criminal proceeding." *Murphy*, 465 U.S. at 435 n. 7 (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973)).

Here, Mr. Swain's statements concerned whether he had viewed pornography or made unapproved contact with minors, and—as the Government represented in its response—were not obtained as part of any investigation of unrelated criminal activity. The First Circuit's position on this is explicit: "because revocation proceedings are not criminal proceedings, [a defendant] will not be entitled to refuse to answer questions solely on the ground that his replies may lead to revocation of his supervised release." *United States v. York*, 357 F.3d 14, 24 (1st Cir. 2004) (holding that Fifth Amendment is not implicated where defendant on supervised release is questioned by polygraph testing concerning past conduct related to his terms of supervised release); *see also United States v. Roy*, 438 F.3d 140 (1st Cir. 2006). Furthermore, probation officers, "by requiring [a defendant] to answer such

questions, will not 'compel' him to incriminate himself within the meaning of the Fifth Amendment." *Id.* (citing *Murphy*, 465 U.S. at 427-28); *see also Roy*, 438 F.3d at 143-44 ("[w]e recently held that the Fifth Amendment is not implicated when an individual on supervised release is questioned during a polygraph test about past conduct related to his or her release terms, as opposed to a government investigation of unrelated criminal activity") (citing *York*, 357 F.3d at 24).

A Defendant may, however, "have a valid Fifth Amendment claim if his probation officers ask, and compel him to answer over his assertion of privilege, a particular question implicating him in 'a crime other than that for which he has been convicted.'" *Id.* (quoting *Murphy*, 565 U.S. at 426). However, that does not appear to be the case here. The Government represents that Mr. Swain's statements were directed to whether he violated his terms of supervised release, namely by purchasing and viewing adult pornography and having unsupervised, unapproved visitation with minors. *Gov't Resp.* at 3. The Government points out that Mr. Swain "makes no claim that the probation officer or polygraph examiner asked any questions designed to investigate some different crime" and represents that "he did not provide any information to his probation officer or to the polygraph examiner that revealed any new criminal conduct, and he has not been charged with any criminal offense." *Gov't Resp.* at 4.

Defense counsel argues that the 1999 Supreme Court case of *Mitchell v. United States*, 526 U.S. 314 (1999), which held that a defendant's guilty plea does not waive her Fifth Amendment privilege with regard to the sentencing proceeding,

changes the result.  *See Def.'s Mot.* at 1.  However, the *Mitchell* Court's holding expressly applies to a waiver of privilege in the interim period between guilty plea and sentencing, and the Supreme Court was not addressing a defendant facing revocation of supervised release.  *See* 526 U.S. at 326-27.

Furthermore, the First Circuit issued *York* and *Roy* years after *Mitchell*, and they clearly hold that a defendant may be required to tell the truth about conduct related to the terms of supervised release.  As First Circuit authority, *York* and *Roy* are binding on this Court.[1]  Here, as in *Roy*, Mr. Swain "makes no argument that truthful answers to the government's questions would implicate him in any new and separate crime," but rather "he claims that he should not [be] compelled to, in effect, revoke his own release by telling the truth about his unsupervised contact with children under 18" and other terms of his supervised release.  438 F.3d at 144.  In the words of the First Circuit, "[i]n light of *York*, this argument is meritless."  *Id.*

## IV.    CONCLUSION

Under *York* and *Roy*, Mr. Swain's statements made pursuant to his polygraph examination do not implicate the Fifth Amendment and are not inadmissible on that basis.  The Court DENIES Defendant's Motion *in Limine* re: Admissibility of Evidence (ECF No. 47).

SO ORDERED.

---

[1] Other Circuits have reached the same conclusion.  *See, e.g., United States v. Locke*, 482 F.3d 764, 767 (5th Cir. 2007) (rejecting Fifth Amendment challenge where polygraph questions directed at defendant were aimed at ascertaining whether he had violated conditions of probation and not at other criminal conduct).

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 17th day of July, 2012