UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 1:11-cr-00015-JAW |
| | ) | |
| | ) | |
| CREG A. SWAIN | ) | |

**ORDER ON MOTION FOR EARLY TERMINATION
OF SUPERVISED RELEASE**

Because the Court concludes that a person on supervised release has not

sustained his burden to demonstrate that his period of supervised release should be

terminated early, the Court dismisses his motion for early termination of supervised

release.

## I.   BACKGROUND

On September 13, 2005, in the Eastern District of Texas, Creg A. Swain was

charged with and pleaded guilty to possession of sexually explicit visual depictions of

minors in violation of 18 U.S.C. § 2252(a)(4)(B).   *Transfer of Juris.*, Attach. 1,

*Information,* Attach. 3, *Docket Sheet* (ECF No. 1).   On April 25, 2006, Mr. Swain was

sentenced in the United States District Court for the Eastern District of Texas to 57

months imprisonment followed by 120 months of supervised release.   *Id.*, Attach. 2,

*J.*   On February 15, 2011, jurisdiction over Mr. Swain's supervised release was

transferred from Eastern District of Texas to the District of Maine.   *Id.*

Mr. Swain got off to a bumpy start in his supervised release in the District of

Maine.   On February 18, 2011, only three days after the transfer of jurisdiction was

docketed, the Government moved to revoke Mr. Swain's supervised release. *Pet. for Warrant or Summons for Offender Under Supervision* (ECF No. 2). This petition resulted in a modification of the conditions of supervised release, imposing a ninety-day period of home confinement. *See Order Modifying Terms of Supervised Release* (ECF No. 24).

On May 18, 2012, the Government filed a second petition to revoke Mr. Swain's supervised release. *Pet. for Warrant or Summons for Offender Under Supervision* (ECF No. 26). The basis of the petition was that Mr. Swain had been discharged from sex offender treatment for numerous violations of the treatment contract, contact with a minor without prior approval of the supervising office, and the possession of pornographic material. *Id.* at 1-2. On August 31, 2012, the Court revoked his supervised release and imprisoned him for four months, imposing a 120-month period of supervised release for failing to participate in sex offender treatment, having unsupervised contact with a child under 18, and viewing images of sexually explicit conduct. *Revocation J.* (ECF No. 66).

On June 19, 2014, the Government filed a third motion to revoke Mr. Swain's supervised release. *Pet. for Warrant or Summons for Offender Under Supervision* (ECF No. 68). The Government alleged that Mr. Swain purchased and used a tablet computer/E-reader to access the internet, viewed pornographic images and movies and failed to disclose his possession and use of the device to the supervising officer. *Id.* at 1-2. On August 18, 2014, the Court sentenced Mr. Swain to five months of incarceration and 120 months of supervised release. *Revocation J.* (ECF No. 91).

On March 2, 2021, Mr. Swain filed a motion for early termination of his supervised release. *Mot. to Terminate Supervised Release* (ECF No. 99) (*Def.'s Mot.*). On March 16, 2021, the Government responded, opposing the early termination. *Gov't's Resp. in Opp'n to Def.'s Mot. to Terminate Supervised Release* (ECF No. 100) (*Gov't's Opp'n*). On March 30, 2021, Mr. Swain replied. *Def.'s Reply to Gov't's Resp. to the Mot. to Terminate Supervised Release* (ECF No. 101) (*Def.'s Reply*).

On April 2, 2021, in accordance with *United States v. Marrero-Pérez*, 914 F.3d 20, 25 (1st Cir. 2019), the Court ordered that the Response to Early Termination Request dated March 11, 2021 from Probation Officer (PO) Stacy Laflin be placed on the docket and permitted the parties to respond to PO Laflin's recommendation. *Order* (ECF No. 102). On April 2, 2021, the Clerk's Office filed PO Laflin's recommendation on the docket. *Resp. to Early Termination Req.* (ECF No. 103) (*PO Mem.*). On April 13, 2021, the Government indicated that it did not intend to supplement its response. *Gov't's Notice Regarding USPO Resp. to Early Termination Req.* (ECF No. 106). On April 15, 2021, Mr. Swain filed a reply to PO Laflin's recommendation. *Def.'s Reply to U.S.P.O. Resp. to Def.'s Req. for Early Termination* (ECF No. 107) (*Def.'s Suppl. Reply*).

## II.   THE PARTIES' POSITIONS

### A.   Creg Swain's Motion for Early Termination

In his motion dated March 2, 2021, Mr. Swain attached a letter dated February 4, 2021 from Dwayne A. Hogan, his sex offender treatment provider, stating that he had completed the program's treatment goals and is "ready to be discharged

from treatment." *Def.'s Mot.*, Attach. 1, *Letter from Dwayne A. Hogan to Stacy Laflin* at 1 (Feb. 4. 2021) (*Hogan Letter*).  Mr. Hogan says that Mr. Swain has "successfully passed a maintenance polygraph exam, which was one of the stated goals." *Hogan Letter* at 1.  Mr. Hogan writes that Mr. Swain has been "open and honest with me regarding his sexual behavior and fantasies, another treatment goal." *Id.*  Mr. Hogan observes that Mr. Swain "seems to be doing well at this time." *Id.*  Mr. Hogan concludes that Mr. Swain "should do fine as long as he stays on his current path of recovery." *Id.*  Mr. Swain's motion is based on the Hogan letter and his view that Mr. Swain no longer needs sex offender treatment.  *Def.'s Mot.* at 1.

### B.     The Government's Opposition

After reciting his performance on supervised release, including the revocations, the Government says that Mr. Swain "does not meet the standard for early termination of supervision." *Gov't's Opp'n* at 3.  The Government concedes that Mr. Swain's completion of the sex offender treatment is "commendable," but it notes that his "time on supervised release has not been without blemish and weighs heavily against terminating supervision now."  *Id.*  After reviewing the nature and circumstances of his federal offense and his subsequent supervised release violations, the Government concludes that the "protection of the public, particularly exploited children" requires continued supervised release.  *Id.* at 4.

### C.     Creg Swain's Reply

In his reply, Mr. Swain acknowledged that the Government's "recitation of [his] supervision history is correct." *Def.'s Reply* at 1.  He notes, however, that he has "not

had any supervised release revocations" since 2014, a "full seven years without any issues." *Id.* He urges the Court to terminate his supervised release or "at least to modify the conditions to make them less strenuous including the internet monitoring provision, as well as continued sex offender treatment and any other provisions the Court deems appropriate." *Id.* Mr. Swain contends that the Court "clearly got a hold of [his] attention after his last revocation and [he] has been compliant since that time." *Id.* at 2.

### D.   Probation Officer Laflin's Memorandum

In addition to relating the developments in Mr. Swain's case that are a matter of record, PO Laflin observed that after Mr. Swain began his third term of supervised release, he became employed as a caretaker for Bill and Jean Bubar. *PO Mem.* at 2. When Mr. Bubar died in February 2020, Mr. Swain lost his job and has been unemployed since then. *Id.*

In March 2020, Mr. Swain's maintenance polygraph was deemed deceptive. *Id.* Mr. Swain disclosed to the polygrapher that he watched shows on HBO and Cinemax for sexual stimulation and in response to the disclosed behavior, he was instructed to resume sex offender counseling with Dwayne Hogan, the PO's contracted treatment provider. *Id.* On February 4, 2021, Mr. Hogan confirmed that Mr. Swain had met his treatment goals and would be discharged from sex offender treatment. *Id.*

In May 2020, the PO last assessed Mr. Swain's risk level using the Post-Conviction Risk Assessment tool and concluded that, even though his risk level had improved, offenders in his latest category have a 30% arrest rate and an 18%

revocation rate in a twelve-month period following the PCRA. *Id.* The PO acknowledged Mr. Swain's improvement but also noted that it has been only twelve months since he had been placed back into the sex offender counseling and less than one month since he completed the program. *Id.*

The PO concluded that even though Mr. Swain had made "considerable strides" since first being released, the end of his ten-year supervised release period will expire in November 2024 and therefore is "in sight." *Id.* at 3. The PO also noted that Mr. Hogan noted in discharging Mr. Swain that he will "do well as long as he stays on his current path of recovery." *Id.* In the PO's view, it is "too early" to determine if Mr. Swain has "toed this path." *Id.* The PO also observed that "maintenance polygraphs and the results of those polygraph examinations will be valuable in determining his adherence to a path of recovery." *Id.* The PO joined the Government in objecting to early termination. *Id.*

### E.    Creg Swain's Supplemental Reply

In his response, Mr. Swain first noted an inaccuracy in the PO's memorandum. *Def.'s Suppl. Reply* at 1. Although the PO said that Mr. Swain is currently unemployed, Mr. Swain said that he is currently receiving disability benefits from the federal government in the form of Social Security Insurance, because he is unable to work. *Id.* Mr. Swain also acknowledges that although he struggled early on, he has not had any issues with supervised release revocations since 2014. *Id.* He also noted that he now has stable housing and has reduced his risk of recidivism. *Id.* at 2-

3.  Mr. Swain asks that the Court either terminate his supervised release or lift some or all the special conditions.  *Id.* at 3.

## III.   LEGAL STANDARD

Under 18 U.S.C. § 3583, a court may terminate a period of supervised release "after the expiration of one year of supervised release."  18 U.S.C. § 3583(e)(1).  As Mr. Swain has now served more than one year of supervised release, the Court is authorized to terminate his remaining term of supervised release.  However, the statute states that the court should consider a set of factors under 18 U.S.C. § 3553(a) in making this decision and the court must be "satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." *Id.* "The showing required for a defendant to obtain a modification of a condition of supervised release pursuant to section 3583(e) is an open question in [the First Circuit]." *United States v. Garrasteguy,* 559 F.3d 34, 43 n.12 (1st Cir. 2009).  The same uncertainty attaches to early terminations under § 3583(e).  The unanswered question is whether, in modifying or terminating supervised release, the trial court acts within its discretion or whether a defendant must demonstrate changed or extraordinary circumstances. *Compare United States v. Kay*, 283 F. App'x 944, 946 (3d Cir. 2008) (unpublished) (reviewing district court's modification of supervised release for abuse of discretion and leaving open the question of whether "significantly changed or extraordinary circumstances" standard is controlling in its modification determination), *with United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997) ("Section 3583(e) provides the district court with retained authority to revoke, discharge, or modify terms and

conditions of supervised release following its initial imposition of a supervised release term in order to account for new or unforeseen circumstances").

Rather than attempt to resolve this uncertain legal issue, the Court will analyze Mr. Swain's motion for early termination under both standards. *See United States v. Caparotta*, No. 1:06-cr-00058-JAW, 2016 U.S. Dist. LEXIS 80925, at *4-6 (D. Me. Jun.22, 2016).

## IV.   DISCUSSION

Even though Mr. Swain has recently made progress in his compliance with the conditions of supervised release, the Court focuses on four main factors in rejecting his request for early termination of supervised release: (1) first, the nature and circumstances of Mr. Swain's offense and his prior sexual misconduct, (2) second, his earlier inability to abide by the conditions of release, resulting in revocations, (3) third, the potential victims of his sexual interest in children are uniquely vulnerable to exploitation, and (4) fourth, Mr. Swain's history of hands-on sexual contact with a minor female is unusual and disturbing.

According to the Presentence Investigation Report (PSR) in Mr. Swain's case, he was about thirty-two years old when he possessed "at least 150 but less than 300" images of child pornography. *Presentence Investigation Report* ¶ 12 (PSR). The PSR reveals that "[n]umerous images possessed by the defendant portrayed sadistic or masochistic conduct or other depictions of violence of prepubescent children." *Id.* In June 2004, Mr. Swain had gone onto a web page operated by the Birmingham Alabama Police Department and had inquired about obtaining child pornography

videos. *Id.* ¶ 14. Law enforcement had assured Mr. Swain that the images were of real children, not actors, and that they were illegal. *Id.* Mr. Swain persisted and ordered ten videos, seven "clearly described to contain visual depictions involving the sexual exploitation of a minor or minors." *Id.* When searched on September 29, 2004, law enforcement found hundreds of images of child pornography on Mr. Swain's computer. *Id.* ¶ 15.

More disturbing is that Mr. Swain admitted hands-on contact with a minor. *Id.* He acknowledged that he had met a minor female online for the purpose of engaging in sex with her. *Id.* He picked up the minor female in Plano, Texas and they had engaged in oral sex. *Id.* Mr. Swain said he did not know the girl's identity. *Id.*

Second, Mr. Swain's earlier inability to abide by the conditions of his supervised release is a matter of record. The District of Maine accepted supervision of Mr. Swain on February 15, 2011, but shortly after his transfer, the PO filed a petition on supervised release, alleging violations of his supervised release. *Transfer of Juris.*; *Pet. for Warrant or Summons for Offender Under Supervision* (ECF No. 2). On April 15, 2011, Mr. Swain admitted two Class C violations of his supervised release conditions and, in response to his violations, on May 3, 2011, the Court modified the terms of his supervised release. *Order Modifying Terms of Supervised Release* (ECF No. 24).

On May 18, 2012, the PO filed a second petition on supervised release. *Pet. for Warrant or Summons for Offender Under Supervision* (ECF No. 26). On July 31,

2012, Mr. Swain admitted violating special condition number four and the Court found him in violation of special conditions one and two. *Min. Entry* (ECF No. 63). The Court sentenced Mr. Swain to four months of imprisonment and ten years of supervised release. *Revocation J.* (ECF No. 66).

On June 19, 2014, the PO filed a third petition on supervised release. *Pet. for Warrant or Summons for Offender Under Supervision* (ECF No. 68). On August 18, 2014, Mr. Swain admitted two violations and the Court imposed a term of five months incarceration and ten years of supervised release. *Revocation J.* (ECF No. 91).

Mr. Swain stresses that his supervised release has not been subject to revocation since he began his third term of supervised release on November 29, 2014, but, as the PO points out, his March 2020 maintenance polygraph was deemed deceptive and he disclosed to the polygraph examiner that he had watched shows on HBO and Cinemax for sexual stimulation, an admission that caused the PO to reinstitute sex offender treatment. *PO Mem.* at 2. The date when Mr. Swain emerged from this last round of sex offender treatment was February 4, 2021, less than three months ago. *Id.* In the Court's view, Mr. Swain's brief period of full compliance with the conditions of supervised release is far too short to justify terminating his supervised release.

The third factor is that Mr. Swain's crime of possession of sexually explicit visual depictions of minors is an offense where the potential victims are young and uniquely unable to defend themselves or even in some circumstances to understand the nature of the violation and to report it.

The final factor is that Mr. Swain's admission that he had hands-on sexual contact with a minor female he had contacted over the internet is unusual, even among persons who have an interest in child pornography. It is one thing to view an image; it is a much more concerning step to cross boundaries whereby a person who is sexually interested in minors would contact a known minor over the internet, arrange to meet the minor, and to engage in oral sex with her. This admission, in the Court's view, places Mr. Swain in a different and more troubling category than many individuals who have been convicted of his federal crime.

If the higher standard is applicable in the First Circuit, Mr. Swain failed to demonstrate any significantly changed or extraordinary circumstances that would justify either a modification or termination of supervised release. As another court observed, a defendant "is not entitled to early termination simply because he has successfully served a portion of his supervised release." *United States v. McKay*, 352 F. Supp. 2d 359, 361 (E.D.N.Y. 2005). Nor is he likely to receive a termination of supervised release by mere compliance with its terms because "ultimately that is what is expected of him." *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998). Assuming the lower standard applies and the Court has the discretion to modify or terminate Mr. Swain's supervised release, the Court declines to do so.

Nothing the Court has written takes away from Mr. Swain's efforts to maintain compliance with the conditions of his supervised release and his more recent lack of violation.[1] It simply represents the Court's judgment that he has not sustained his

---

[1]    The Court accepts Mr. Swain's careful distinction between being unemployed and unable to work. *Def.'s Suppl. Reply* at 1. The Court is unable to assess the basis for Mr. Swain's receipt of social

burden to demonstrate that his period of supervised release and the conditions currently imposed on his supervised release should be shortened.

## V.    CONCLUSION

The Court DISMISSES without prejudice Creg Swain's Motion to Terminate Supervised Release (ECF No. 99).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of April, 2021.

---

security disability benefits.  When he was sentenced in 2006, the PSR described him as "healthy," *PSR* ¶ 40, and he had a history of employment in the food service industry.  *Id.* ¶¶ 44-45.  There are some references to anxiety and depression in subsequent revocation reports, which may be the basis for his disability.  Even so, Mr. Swain is relatively young at forty-nine years old and the prospect of a lifetime of daily idleness is not edifying.  The Court urges Mr. Swain to consider whether there are jobs he can do and to obtain one, if possible.